## Siracusa, Appellant, *v.* The Miller Construction Company.

*Corporations—Officers—Secretary—Letter of secretary.*

1. Where a letter addressed to a corporation is answered by the secretary of the company over his individual signature, and the letter so signed showed that it was an answer to the letter received, the court cannot, in the absence of any evidence on the subject, say that the answer was the individual act of the secretary, and not the act of the corporation.

*Master and servant—Contract of employment—Change of employment—Evidence—Charge of court.*

2. Where a construction company employs a number of foreign workmen, puts them to work at a plant of its own, but subsequently transfers them to another plant which is alleged to have been operated by an independent contractor, and the men are not notified of any change in their employment, or that they are to look to a new employer for their wages, and the work is of the same character as at the other plant, and visibly part of a continuous line, and one month's wages for work done at the second plant is paid by the construction company, the latter company will be liable for the wages of the workmen for work done at the second plant.

3. In such a case where there is evidence that a written order was given by the construction company, assigning the laborers to the other work, although the paper is not produced, it is error for the court to refer to the order as merely a paper of identification.

4. Where in such a case the construction company makes a clear admission of its liability when the claims of the laborers are presented to it by a justice of the peace, it is reversible error for the trial judge in a suit against the company for the wages to use such language as would lead the jury to conclude that the amount claimed was not due from the construction company, but was due from the independent contractor.

5. When there is sufficient evidence upon a given point to go to the jury, it is the duty of the judge to submit it calmly and impartially. And if the expression of an opinion upon such evidence becomes a matter of duty under the circumstances of the particular case, great care should be exercised that such expression should be so given as not to mislead, and especially that it should not be one-sided. The evidence, if stated at all, should be stated accurately, as well that which makes in favor of a party as that which makes against him; deductions and theories, not warranted by the evidence, should be studiously avoided; they can hardly fail to mislead the jury and work injustice.

Argued April 13, 1909.   Appeal, No. 87, April T., 1909, by plaintiff, from judgment of C. P. Venango Co., Nov. T., 1907, No. 40, on verdict for defendant in case of T. Siracusa v. The Miller Construction Company.   Before Rice, P. J., Henderson, Morrison, Orlady and Head, JJ.   Reversed.

Assumpsit for wages.   Before Criswell, P. J.
Appeal from judgment of justice of the peace.

468 SIRACUSA, Appellant, *v.* THE MILLER CONS. CO.

Statement of Facts—Oponion of the Court.   [43 Pa. Superior Ct.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (4, 5, 9, 10, 11) the instructions referred to and quoted in the opinion of the Superior Court.

*Gervaise G. Martin,* for appellant.

*A. R. Osmer,* with him *J. H. Osmer* and *N. F. Osmer,* for appellee.

OPINION BY HEAD, J., July 20, 1910:

The defendant is a corporation which in the winter of 1906–1907 took a contract for the grading and preparation of the right of way of a railroad company through portions of Venango county.   The plaintiff began this action to recover wages for labor done by him on a part of this line in the month of March, 1907.   It appears that along the line two camps had been constructed where the workmen temporarily lived.   One was known as Brandon's ferry, the other as Victory run.   The labor, for the wages of which the plaintiff sues, was done on the portion of the line known as the Victory run job.   The defendant, not denying that the plaintiff did the work, and consequently earned the money for which he sues, defends on the ground that this work was not done for it.   It alleges that although it had a general contract for the entire construction through the county, it had sublet that portion of the work called the Victory run job to an independent contractor, referred to in the testimony as the Auman Construction Company, and that it was in nowise responsible for the wages of those who performed labor on that job.   This defense naturally put the parties at issue as to certain important questions of fact.

The plaintiff's theory, which he supported by evidence,

was that he was one of a number of Italians who had been hired in Pittsburg, at the instance of the defendant, and had been taken up to Venango county and put to work on the right of way, probably in December, 1906. That he was first put to work at Brandon's ferry and remained there until near February 1; that during that time he was in the service of the defendant company, employed by it, doing its work, and paid by it. That he was never discharged from that service and never agreed to go into the service of any other employer. That about February 1, he was moved, with a number of his fellows, by the order of the defendant's officials, from Brandon's ferry to Victory run. That during the month of February he worked at the latter place and received his pay as before from the defendant; that he continued to work during the month of March but never received payment for the wages earned during that month.

During the course of the trial a paper was offered and admitted in evidence marked exhibit "A." This was first a letter from the manager of an employment office in the city of Pittsburg, whose name was Schepis, whose business it was to furnish workmen for contractors doing railroad work. On November 24, 1906, he addressed a letter to The Miller Construction Company advising it that he was now in a position to furnish any number of laborers the company might need on its work. This letter was received at the office of The Miller Construction Company and the following reply, written on the same sheet, was mailed to the employment office: "Dear Sir: How soon can you put 50 men at Brandon, Pa. for all winter's work? Answer at once to Franklin, Pa. C. E. Lovejoy." Lovejoy was the secretary of The Miller Construction Company.

The manifest purpose of the offer of this letter was to show that when the plaintiff and his fellows were originally taken from Pittsburg to Venango county, they went into the service of the defendant and thus that the relation of master and servant, employer and employee was estab-

lished. In referring to this in the general charge the learned court said: "We call your attention to the fact, gentlemen, that while the letter is directed to The Miller Construction Company, the reply is not by The Miller Construction Company but by Mr. Lovejoy individually." This is made the subject of the ninth assignment of error. As we read the record, it discloses no evidence whatever to warrant the court in making the assertion contained in the language quoted. The letter, in response to which the reply was written, was a letter, not to Lovejoy individually, but to the company of which he was secretary. As an individual he had no right to receive that letter, to pass upon its contents, or to reply to it. On the other hand, the normal and natural way for the company, to which it was addressed, to make reply, would be by the hand of its proper officer, to wit, its secretary. There is no evidence that the company, its officers or directors, repudiated this reply or denied responsibility for it. Although it was of great importance to the plaintiff to convince the jury clearly that he had gone into that section to work for the defendant company, the learned court disposed of this item of evidence by the declaration that the reply was not the act of The Miller Construction Company, but only the act of Mr. Lovejoy as an individual. The farthest we think the learned court could have properly gone would have been to have submitted the question of fact to the jury, even though every reasonable inference from the facts in evidence pointed to the conclusion that it was the act of the company. The ninth assignment is sustained.

The transfer of the men from Brandon's ferry to Victory run was accomplished under these circumstances. One McMurdy was the person in active charge of the work at Victory run. He needed more men. He went to the office of the defendant company at Franklin, made known his wants and received an order from Miller, the vice president, signed by Lovejoy, directing the transfer of the required number of men to Victory run. The witness,

McMurdy, says: "I took them from there (Brandon) on
an order from Miller, signed by Lovejoy, and put them to
work on the Victory run job."   Marando, who had taken
the gang of Italians from Pittsburg to Venango county for
the defendant, and who in a general way looked after their
interests, testifies on this subject: "Q. Did you know what
was the occasion of their going to the Victory run camp?
A. They hadn't the steam shovel ready yet, and when it
wasn't ready they moved the men for about two weeks.
Q. How did they come to move them?   A. Mr. Lovejoy
came himself and told me to take those men to Victory
run camp where McMurdy was.   Q. Was there any writ-
ing?   A. He gave me an order."   Here again was evidence
of the first importance to substantiate the theory of the
plaintiff that, in changing his place of work, he did not
change or intend to change employers.   In adverting to
this testimony in the general charge the learned court
used the following language which is made the subject of
the fifth assignment of error, to wit: "There was some evi-
dence that some kind of an order was given by Mr. Love-
joy and taken to these men, but it developed that it was
simply a paper given to Mr. McMurdy for the purpose
of identification."

We have gone over the record with much care but we
are unable to find in it any warrant for this conclusion on
the part of the learned trial judge.   The order itself, as
we understand it, was not produced in evidence.   The
testimony as to its purport and purpose seems to be clear
enough and this testimony, as we read it, might easily
have led the jury to an entirely different conclusion.   As
the writing itself was not in evidence and the character of
its contents was proven only by oral testimony, it was
the function of the jury, under proper instructions, to de-
termine what were the character and object of the order.
The fifth assignment is sustained.

. When the wages earned in the month of March by the
plaintiff and his colaborers were not paid, their claims
were left with Esquire BUNCE, a justice of the peace, for

collection. According to his testimony he took these claims to the office of the defendant company where he met its officials and presented them for payment. He testifies they made no denial that the work had been done or that the wages were due and declared they would pay the bill. He says: "Mr. Miller made an appointment with me to have all the bills at his office. Q. What do you mean by all the bills? A. The bills for labor that I had in my hands for collection, this one [the plaintiff's] with others, and bring the statements and have an attorney come to his office that evening, and in pursuance of that I went there. Q. Did he say why he wanted them to come there? A. He wanted to settle the claims. . . . Q. Was the money paid that night? A. No, sir. Q. Was any reason given by the Miller company why it wouldn't be paid? A. Yes, sir, they said we are willing to pay the amount but we will retain the commissary. . . . Q. Did they raise any question then as to the liability of The Miller Construction Company? A. No, sir."

The witness goes into considerable detail to explain that the defendant company wanted to so arrange the matter, if possible, that they could get from Auman, whom they now claim to have been a subcontractor, certain moneys due them from him, or property of his in lieu thereof. But in no way was his testimony that we have quoted shaken, yet the learned trial court, in treating of this evidence which was most material to the plaintiff's case, used the following language, fourth assignment: "Squire Bunce testifies to a conversation had at the office of The Miller Construction Company after the work was performed, in which he states at first that it was admitted that the amount was due by The Miller Construction Company to this man, but before he left the stand he stated that Mr. Miller and those in the office requested him to proceed and secure judgment against Mr. Auman, or the Auman Construction Company, and then attach the money in their hands. This conversation, if it took place as they allege, would indicate that the amount was

not due from The Miller Construction Company, but was due from Mr. Auman." Again we are obliged to say that the testimony as to what took place, being oral, it·was for the jury under proper instructions and not for the court to determine what it indicated. According to the testimony the defendant company made a clear admission, both of its liability and of its intention to pay. The plan which the officials sought to have the magistrate follow was not any withdrawal of either of these admissions and was not apparently so intended, but was designed to straighten out the relations of the company with Auman rather than to affect the plaintiff and other laborers in any particular. The fourth assignment is sustained.

The tenth and eleventh assignments complain of the charge as a whole in that the learned judge failed to clearly and adequately define the issue between the parties and to accurately and judicially present for the jury's consideration the law applicable to the case. A careful reading of the entire charge impresses us with the idea that the learned trial judge was strongly of the opinion that the weight of the testimony was so clearly against the plaintiff that there was but little left for the jury to consider. Now the plaintiff's theory was supported by evidence that tended to show the following facts: The defendant, as we have said, had contracted for the necessary work along the entire right of way. Being in need of laborers, it had arranged, through an employment office in Pittsburg, to have a number of Italian workmen gathered together and hired, as the reply to the letter quoted indicated, "for all winter's work." These men, the plaintiff among them, were thus assembled, taken to Venango county and placed on the job at Brandon's ferry. There does not seem to be now any question that while there they were working for and paid by the defendant company. By the order of their employer, some of the men, the plaintiff again among them, were transferred from Brandon to Victory. The men were not notified of any change in their employment. They were not advised, nor

was anyone representing them, that thereafter they would have to look to a new employer for their wages. The work done at the new place was the same in character as at the old and visibly a part of a continuous line. When the first month was completed they were paid by checks signed by Lovejoy, with whom their representative had become familiar as a general officer of the defendant company. It is true there is testimony that in signing these checks Lovejoy was in fact acting for Auman, but that did not appear, and the effect of the testimony in explanation of these checks was for the jury after having been properly instructed by the court.

The evidence does not show the existence of any partnership or corporation known as The Auman Construction Company. It does show that an individual named Auman appeared once or twice on the Victory run job, and McMurdy states he was working for him or for a construction company under whose name he operated. It also shows that the defendant company owned much of the machinery, if not all of it, used in that portion of the work; that it supplied the cement and other matters of like significance, not necessary here to be detailed, but all tending strongly to show not only that the plaintiff believed he was, all of the time, in the service of The Miller Construction Company; but that there were very strong reasons to induce such belief even in the mind of a man much more intelligent than he. In a word, the testimony produced on the part of the plaintiff was fairly calculated, if accepted by the jury as true, to shatter the single line of defense interposed by the defendant.

Viewing the testimony in this light, as we do, we cannot escape the conclusion that the charge of the learned trial court was inadequate to fairly present to the jury the strength of the plaintiff's case. The learned trial judge was not bound to advert to the testimony in detail at all, but having undertaken to do so, he was bound to so present it that the fair weight of the plaintiff's contention would not be diminished by such presentation. "When

there is sufficient evidence upon a given point to go to the jury, it is the duty of the judge to submit it calmly and impartially. And if the expression of an opinion upon such evidence becomes a matter of duty under the circumstances of the particular case, great care should be exercised that such expression should be so given as not to mislead, and especially that it should not be one-sided. The evidence, if stated at all, should be stated accurately, as well that which makes in favor of a party as that which makes against him; deductions and theories, not warranted by the evidence, should be studiously avoided; they can hardly fail to mislead the jury and work injustice:" Burke v. Maxwell's Admrs., 81 Pa. 139. The tenth and eleventh assignments are sustained. The remaining assignments, not herein specially adverted to, are overruled.

Judgment reversed and a venire facias de novo awarded.